**Phillip L. LINDQUIST, et al.,**
**Plaintiffs-Appellants,**

v.

**IDAHO STATE BOARD OF**
**CORRECTIONS, et al.,**
**Defendants-Appellees.**

No. 84–4253.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 28, 1985.

Decided Nov. 15, 1985.

Harold A. Belodoff, Boise, Idaho, for plaintiffs-appellants.

Lynn Thomas, Boise, Idaho, for defendants-appellees.

Before WALLACE, FARRIS, and HALL, Circuit Judges.

WALLACE, Circuit Judge:

Certain inmates at the Idaho State Correctional Institution (the Prison) filed a class action in district court for declaratory and injunctive relief on behalf of all present and future inmates (the inmates) alleging a denial of their constitutional right of meaningful access to the courts. The district court certified the class, found certain deficiencies, and approved a plan to provide the inmates with meaningful access. Subsequently, the court found the

Prison was complying with the plan, and denied the inmates' request for permanent injunctive relief. The inmates filed a timely appeal from the district court's order. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

I

In their class action filed pursuant to 42 U.S.C. § 1983 on January 12, 1978, against certain state correctional officials, the inmates alleged that they were unable to prepare legal defenses, petitions, and appeals to the courts because the Prison did not provide them with access to an adequate library, sufficient legal assistance, an adequate number of functioning typewriters, sufficient paper and supplies, and access to copying machines. In addition, it was alleged that those inmates assigned to maximum security, to the adjacent reception center, and to the minimum custody facility located one-quarter of a mile from the Prison, were denied both access to the Prison's library and effective assistance from persons trained in the law.

On June 8, 1981, the district court found that the Prison's program to provide its inmates with meaningful access to the courts was constitutionally inadequate and issued an order giving the Prison six months to implement changes that would bring its program up to constitutional standards. On October 26, 1982, subsequent to a compliance hearing, the district court concluded that the Prison had substantially complied with the June 8, 1981 order, and dismissed the action. The inmates appealed the district court's finding of compliance, and later filed a motion for an order to show cause why the Prison should not be held in contempt for allegedly making drastic and detrimental changes in its legal access program. The district court denied the request because there was no outstanding order of the court that the Prison could have disobeyed. The inmates also appealed that decision.

In an unpublished disposition, we affirmed the district court's decision denying the inmates' motion for an order to show cause, but vacated the compliance determination and remanded to the district court for an entry of findings of fact and conclusions of law. See Fed.R.Civ.P. 52(a). On August 20, 1984, the district court did so. The inmates filed a motion to alter or amend the district court's findings and conclusions to reflect allegedly current conditions at the Prison's law library. The district judge denied the motion because he had not retained jurisdiction to monitor subsequent conditions at the law library. The inmates filed notice of appeal from district court's denial of the requested declaratory and injunctive relief.

II

The status of prison law libraries is frequently changing due to new ideas pertaining to what law books should be provided, due to general efforts by prison officials to improve the libraries, and due to court orders. This library is no different. The status of the law library becomes a moving target and we must decide whether any changes made subsequent to entry of the order before us may affect our review.

The Prison contends our ability to review this case is affected by a subsequent district court decision involving this law library. The Prison argues that *Xdoe v. Murphy*, No. 84–3115 (D.Idaho Apr. 26, 1985) (*Xdoe* ), may render "ineffective" any decision by us. By this we assume that the Prison suggests mootness. To deal with this suggestion, we take judicial notice of the factual findings in *Xdoe, see United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980); *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir.), *cert. denied*, 404 U.S. 967, 92 S.Ct. 344, 30 L.Ed.2d 287 (1971); *Kasey v. Molybdenum Corp.*, 336 F.2d 560, 563 (9th Cir.1964); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2410, at 359–61 (1971), and consider whether the change in facts during the pendency of this appeal has caused some of the inmates' claims to become moot.

A case, or an issue in a case, is considered moot "if it has 'lost its charac-

ter as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" *Connolly v. Pension Benefit Guaranty Corp.*, 673 F.2d 1110, 1113 (9th Cir.1982), *quoting Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969) (per curiam). As a general rule, however, voluntary cessation of allegedly illegal conduct does not make a case moot. *See United States v. W.T. Grant, Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (*W.T. Grant*). But a case may become moot if "(1) it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations omitted), *quoting W.T. Grant*, 345 U.S. at 633, 73 S.Ct. at 897; *see Halet v. Wend Investment Co.*, 672 F.2d 1305, 1307–08 (9th Cir.1982). There is a heavy burden of proof to demonstrate mootness. *See W.T. Grant*, 345 U.S. at 633, 73 S.Ct. at 897.

■ In *Xdoe*, the district court pointed out that during the pendency of this appeal, the Prison moved its law library to a "more spacious quarters," and that "new tables and chairs have been provided with seating for up to 40 inmates." We conclude that the existence of the new library causes the inmates' claim that the Prison failed to provide adequate library space, tables, bookshelves, and lighting to be moot. Both in this case and in *Xdoe*, the district court emphasized that the Prison has acted in good faith to improve the quality and condition of its law library. There is no indication that the Prison will abandon its efforts. Indeed, the Prison's decision to move the library to more spacious quarters does not appear to have been motivated by a desire to cease voluntarily any illegal conduct, because the district court held that the former library facilities were constitutionally adequate. Furthermore, the existence of the new library completely and irrevocably eradi-

cates any possible effects of the allegedly inferior library that existed at the time this appeal was taken. *See Hudson v. Robinson*, 678 F.2d 462 (3d Cir.1982).

The other issues, however, have not been totally mooted by the changes in the library's location. Consequently, we proceed to review the remaining questions presented to us.

### III

■ When we first reviewed this case, we pointed out that "we have no quarrel with the district court's general statement of parameters in its June 8, 1981, order" but we remanded because we were "unable to review its application to specific facts" without findings. It thus appears that the plan was deemed satisfactory—our inquiry was as to its application. Nevertheless, the inmates argue that the plan approved by the district court to provide them with meaningful access to the courts does not meet minimum constitutional standards. This is a question of law reviewable de novo. *See United States v. McConney*, 728 F.2d 1195, 1199–1205 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Because our earlier disposition did not provide analysis, we will do so here.

■ The inmates allege first that the plan is constitutionally deficient because meaningful access can be achieved only by providing inmates with the assistance of an attorney. The Supreme Court has not gone that far. In *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (*Bounds*), the Court held that prison inmates have a constitutional right of access to the courts that "requires prison authorities to assist inmates ... by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498 (emphasis added). The Court held that an adequate law library can provide inmates with meaningful access to the courts because "*pro se* petitioners are capable of using law books to file cases rais-

ing claims that are serious and legitimate even if ultimately unsuccessful." *Id.* at 826–27, 97 S.Ct. at 1497.

Relying on *Bounds,* we have held that a prison must provide inmates with access to an adequate law library or, *in the alternative,* with adequate assistance from persons trained in the law. *See Washington v. Penwell,* 700 F.2d 570, 572 (9th Cir.1983); *United States v. Wilson,* 690 F.2d 1267, 1271–72 (9th Cir.1982), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983); *Storseth v. Spellman,* 654 F.2d 1349, 1352–53 (9th Cir.1981); *Leeds v. Watson,* 630 F.2d 674, 676–77 (9th Cir.1980). The district court interpreted *Bounds* in a similar fashion and approved the state's plan to furnish inmates with meaningful access to the courts by providing a law library with sufficient space, chairs, and bookcases; essential and up-to-date law books; paper and writing facilities; typewriters and copy equipment; and inmate law clerks trained to assist inmates with legal problems.

The inmates' position, however, gathers support from several district court decisions outside of this circuit. *See Smith v. Bounds,* 610 F.Supp. 597, 603 (E.D.N.C. 1985) (assistance of counsel required because of state's unwillingness to comply with a plan requiring a law library and trained inmate law clerks); *Hooks v. Wainwright,* 536 F.Supp. 1330, 1340–41 (M.D. Fla.1982) (an adequate law library combined with inmate law clerks does not meet the meaningful access requirements of *Bounds* ), *dismissed without opinion,* 716 F.2d 913 (11th Cir.1983); *Canterino v. Wilson,* 562 F.Supp. 106, 111–12 (W.D.Ky. 1983) (assistance of persons trained in the law is necessary because female inmates are not as experienced as their male counterparts are at utilizing prison law library resources); *Glover v. Johnson,* 478 F.Supp. 1075, 1097 (E.D.Mich.1979) (same). Nevertheless, we find it impossible to ignore the Supreme Court's explicit holding in *Bounds* that "adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts." 430 U.S. at 830, 97 S.Ct. at 1499. In fact,

the position advanced by the inmates is the same as that Justice Stewart unsuccessfully urged in *Bounds* : if the Constitution requires meaningful access to the courts, then something more than access to a law library is needed. *Id.* at 836–37, 97 S.Ct. at 1502 (Stewart, J., dissenting).

A recent First Circuit opinion lends support to our interpretation of *Bounds.* In *Cepulonis v. Fair,* 732 F.2d 1 (1st Cir. 1984), the court reversed a district court that had required the state to provide inmates with a law library and legal assistance from second and third year law students. The court concluded that

*Bounds* requires only "adequate law libraries *or* adequate assistance from persons trained in the law," not both. This is not to say that a court may never order a mixture of library access and lawyer or paralegal assistance: an insufficiency of library time might have to be supplemented by a certain amount of assistance. Moreover, in order to provide an "adequate law library" some library personnel might be required to keep the books in order. But *Bounds* does not create an entitlement to legal aid assistance if library access is otherwise constitutionally adequate.

*Id.* at 6. Other circuits, as well as a number of district courts, appear to have adopted a similar position. *See, e.g., Penland v. Warren County Jail,* 759 F.2d 524, 531 n. 7 (6th Cir.1985) (en banc); *Holt v. Pitts,* 702 F.2d 639, 640–41 (6th Cir.1983) (per curiam); *Crisafi v. Holland,* 655 F.2d 1305, 1310 (D.C.Cir.1981) (per curiam); *Kelsey v. State,* 622 F.2d 956, 957 (8th Cir. 1980); *Falzerano v. Collier,* 535 F.Supp. 800, 803 (D.N.J.1982); *Stevenson v. Reed,* 391 F.Supp. 1375, 1382 (N.D.Miss.1975), *aff'd,* 530 F.2d 1207 (5th Cir.) (per curiam), *cert. denied,* 429 U.S. 944, 97 S.Ct. 365, 50 L.Ed.2d 315 (1976).

▮ What is constitutionally adequate, however, cannot be determined solely by counting books and checking law library floor plans. A book and a library are of no use, in and of themselves, to a prisoner

who cannot read. The inmates thus contend that the approved plan is also constitutionally deficient because it fails to provide meaningful access to those inmates who are unable to use a law library because they are uneducated, illiterate, or do not speak English. Assuming the Constitution requires added assistance in these circumstances, the plan complies by the use of inmate law clerks to meet the asserted deficit. In addition, we do not overlook the possibility that inmates can receive help from unpaid "jailhouse lawyers" and "writ-writers." *See Cruz v. Hauck,* 627 F.2d 710, 721 (5th Cir.1980). It is not required that a prison with a constitutionally adequate library provide inmates also with legal counsel.

 Finally, the inmates allege that the approved plan is constitutionally deficient because the law book inventory outlined by the district court[1] is inadequate. The inmates specifically contend that the library must contain the Pacific Reporter 2d, Shepard's Citations, a number of additional reference books, and earlier editions of the Federal Supplement. Such materials would be found in an ideal law library. However, the Prison need not provide its inmates with a library that results in the best possible access to the courts. Rather, the Prison must provide its inmates with a library that meets minimum constitutional standards. *Cf. Procunier v. Martinez,* 416 U.S. 396, 420, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974) (prison not required to adopt every proposal that facilitates prisoner access to the courts). Although the failure to provide Shepard's Citations is questionable, *Bounds,* 430 U.S. at 820 n. 4, 97 S.Ct. at 1493, n. 4, the law book inventory approved by the district court is substantially similar to those required by other

courts. *See, e.g., Cepulonis v. Fair,* 563 F.Supp. 659, 660 (D.Mass.1983), *rev'd on other grounds,* 732 F.2d 1 (1st Cir.1984); *Hardwick v. Ault,* 447 F.Supp. 116, 133–34 (M.D.Ga.1978); *Smith v. Bounds,* 538 F.2d 541, 544 (4th Cir.1975), *aff'd,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

The inmates contend that our decision in *Gaglie v. Ulibarri,* 507 F.2d 721 (9th Cir. 1974), requires us to find that the Prison's library must have the Federal Supplement beginning with volume 200. In *Gaglie,* we affirmed a lower court judgment which required those volumes. We specifically stated, however, that we did not decide if a lesser number of books would be sufficient as that issue was not presented on appeal or in the district court. *Id.* at 722.

We conclude that the law book inventory approved by the district court meets minimum constitutional standards and provides inmates with sufficient access to legal research materials to prepare *pro se* pleadings, appeals, and other legal documents.

## IV

The inmates also contend that even if the approved plan is constitutionally adequate, the district court erred in concluding that the Prison was complying with the plan. The inmates assert that the existing library facility is inadequate, that the inmate law clerks are untrained and insufficient in numbers, that inmates were not given sufficient access to the library, and that the typewriters and paper supplies are inadequate. We will not address the adequacy of the library facility as we have already found that claim to be moot. As to the remaining issues raised, we review factual findings under the clearly erroneous standard, Fed.R.Civ.P. 52(a), while those claims

---

1. The district court ordered that the state provide and keep current the following books: Idaho Code; Idaho Reports; United States Reports, from 1962 to present; Federal Reporter Second Series, beginning with volume 273; portions of the United States Code Annotated, including Federal Rules of Appellate Procedure and Federal Rules of Evidence; Appellate Rules of the Ninth Circuit Court of Appeals; Local Rules of the United States District Court for the District

of Idaho; various Nutshells on procedure, civil rights, criminal law, constitutional law, and legal research; West Pacific Digest Second Series; various volumes of Federal Practice & Procedure; Manual for Complex Litigation Pamphlet Subscription; Federal Practice & Procedure, Criminal Pamphlet; West Federal Practice Digest 2d; Pacific Digest Second Series; Federal Supplement, beginning with volume 482.

that are mixed questions of law and fact that are not "essentially factual" are reviewable de novo. *United States v. McConney*, 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

#### A.

█ The inmates contend that the inmate law clerks who work in the library are untrained and, therefore, unable to assist other inmates who are illiterate, uneducated, or do not speak English. The inmates also suggest that four inmate law clerks is an insufficient number to serve a prison population of over 950 inmates. The district court found that a program was being employed to provide inmate law clerks with minimum training in legal research and writing. The program consisted of two 45-minute video cassette tapes and an inmate law clerk training program conducted by an attorney hired by the Idaho Department of Corrections.

Inmate law clerks need not be extensively trained to possess adequate ability to assist disadvantaged inmates and to provide them constitutionally sufficient access to the courts. We take judicial notice that in *Xdoe* the district judge found that there are now seven inmate law clerks, several of whom have a great deal of experience and do an excellent job. Furthermore, in *Xdoe* the court stated that a new extensive program on methods of legal research and writing is being conducted by the staff of the state law library, which will be videotaped and then used to train inmate law clerks. To the extent this issue is not moot, we conclude, after reviewing the record, that the district judge did not err in his determination that there are a sufficient number of law clerks to assist the disadvantaged inmates at the Prison, and that the training the inmate law clerks are presently receiving meets the constitutional minimum requirements.

#### B.

The inmates also contend that the approved plan does not provide all inmates of every classification at the Prison with adequate access to the library and that inmates are constantly being denied visits and put on waiting lists to use the library. On the other hand, the Prison alleges that inmates, including those at the reception center and minimum custodial facility, are provided access to the Prison's library upon request, but that on the average, only seven to eight inmates use the library at any given time.

Some background will put this argument into context. In his June 8, 1981 decision, the district judge found that the original plan allows all inmates some access to the law library, regardless of security classification. He stated that as to close-security inmates the plan needed to be fully implemented. After the first appeal and our remand, the order finding substantial compliance was supplemented by findings of fact and conclusions of law. As to access, the district judge provided findings for the deficit found in the June 8, 1981 order. He stated that carrels isolated by wire mesh were established in the library for close-security prisoners, that special times had been assigned for the use of these carrels, and that inmate law clerks provided books and supplies to the carrels as requested. Those findings, of course, had to do with the situation existing at the time of the compliance order, October 23, 1982. The inmates did not move for amendment of these findings to state a different situation as of October 23, 1982, but requested amended findings only to describe the facts as of August 20, 1984, the date they filed their motion to amend.

Thus, the inmates never requested amended or additional findings directed at the issue we are reviewing: the order of the district judge deciding that as of October 26, 1982, the Prison had substantially complied with the plan. Certainly, a party who does not provide the trial court with suggested amended or alternative findings on the issue to be reviewed on appeal is not in a favorable position to complain about their incompleteness. *See Reliance Finance Corp. v. Miller*, 557 F.2d 674, 681–

82 (9th Cir.1977). To the extent the inmates have preserved this issue, we conclude that the decision by the district court should not be reversed.

■■■■ The existence of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library. *See, e.g., Ramos v. Lamm,* 639 F.2d 559, 583–85 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Williams v. Leeke,* 584 F.2d 1336, 1340 (4th Cir.1978), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979); *Twyman v. Crisp,* 584 F.2d 352, 358 (10th Cir.1978) (per curiam) (*Twyman* ). However, the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used. *Twyman,* 584 F.2d at 358. The fact that an inmate must wait for a turn to use the library does not necessarily mean that he has been denied meaningful access to the courts. *See Nadeau v. Helgemoe,* 561 F.2d 411, 418 (1st Cir.1977).

■■■■ Prison officials constantly revise schedules to meet the needs of a changing prison population. Our review, however, is of the schedule of access at the time the compliance order was filed. Our review of the record indicates that the Prison's library was open for a minimum of 11 hours each day. We consider that to be an adequate amount of total library access time. The Prison cannot be expected to keep the library open 24 hours a day, even if doing so would improve the inmates' ability to conduct legal research. The schedule of access allocated blocks of time during each day to the different classes of inmates and permitted inmates at various custodial levels to use the library at specified times upon request.

Furthermore, we take judicial notice of the fact that the new library facility can accommodate up to 40 inmates at one time, which undoubtedly will provide for a significant increase in library access. In *Xdoe,* the district court specifically found that a "very workable and well planned schedule for use of the library is presently being used." To the extent this question is not moot and was properly preserved, we conclude that the Prison's schedule of access was being complied with and that it provided inmates with reasonable access to the library.

### C.

The inmates also contend that the district court erred in finding that adequate paper and supplies and a sufficient number of functional typewriters were available at the Prison. The existence or condition of the library's typewriters is irrelevant, as the Constitution does not require that they be made available to inmates. *See, e.g., Twyman,* 584 F.2d at 358; *Wolfish v. Levi,* 573 F.2d 118, 132 (2d Cir.1978), *rev'd on other grounds,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Tarlton v. Henderson,* 467 F.2d 200, 200–01 (5th Cir.1972) (per curiam). In any event, the record indicates that functional typewriters and adequate paper and supplies were provided.

### V

■■■■ As their final argument, the inmates contend that the district court abused its discretion in not issuing a permanent injunction against the Prison. The decision to grant or deny an injunction will not be disturbed on appeal unless there is a clear abuse of discretion. *SEC v. Arthur Young & Co.,* 590 F.2d 785, 787 (9th Cir. 1979). We will not find an abuse of discretion unless the inmates demonstrate that there was no reasonable basis for the district court not to issue the injunction. *Id.*

■■■■ The inmates maintain that the district court should have issued an injunction because of the serious threat that the Prison will return to former unconstitutional practices after this litigation is over. The record, however, does not support the inmates' argument. At the compliance hearing, the district court specifically found that the Prison had complied with the plan that was approved by the court. Addition-

ally, the findings of the court in *Xdoe* demonstrate that the Prison has continued to make changes beyond those ordered or constitutionally mandated to improve the inmates' meaningful access to the courts. Furthermore, the district court in this case and in *Xdoe* specifically found that the Prison has in good faith formulated and complied with a constitutionally acceptable plan. Consequently, we can see no reason to find that the district judge abused his discretion in denying the requested injunctive relief.

AFFIRMED.