**UNITED STATES of America, Plaintiff,**

v.

**Gust Marion JANIS, Defendant.**

**Civ. No. 92–0432–T(BTM).**

United States District Court, S.D. California.

Oct. 27, 1992.

William Braniff, U.S. Atty., William V. Gallo, Asst. U.S. Atty., San Diego, CA, for U.S.

Frank M. Murphy, III, San Diego, CA.

## MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION CONCERNING ACCESS TO THE COURTS

MOSKOWITZ, United States Magistrate Judge.

Gust Marion Janis is presently being detained in the Metropolitan Correctional Cen-

ter (MCC) in San Diego, California. He has been indicted and is awaiting trial for conspiracy to manufacture and possess, with intent to distribute, methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 846, three counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and two counts of possession of a listed chemical with intent to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(d)(1), 802(33) & 802(34)(C). If convicted, Janis faces a lengthy prison sentence. Janis is representing himself in the present criminal case. He also has three criminal cases pending against him in the state courts of California, Washington and Nevada. Additionally, Janis alleges that he is litigating several civil suits and appealing a bankruptcy decision to the Ninth Circuit Court of Appeals. Thus, Janis is presently involved as a party in a substantial number of criminal and civil cases.

█ Janis contends that he has effectively been denied his right of access to the courts by various shortcomings in the MCC. The usual route for raising claims of denial of access to the courts is through a civil rights action under 42 U.S.C. § 1983. *See, e.g., Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851 (9th Cir.1985); *Williams v. Wyrick*, 747 F.2d 1231 (8th Cir. 1984). Janis has not brought such an action. Janis, however, has been detained without bail under 18 U.S.C. § 3142(e) and (f). He has been committed to the custody of the Attorney General (MCC) pending future proceedings in this case. This court has jurisdiction in the context of the criminal case to determine Janis' claims as they relate to his right to adequately represent himself, consult with his standby counsel, and the conditions of his pretrial detention. *See, e.g.,* 18 U.S.C. § 3142(i)(3) (Requiring court to order custodian of pretrial detainee to provide for reasonable opportunity for private consultation with counsel). This court's rulings therefore are limited to things the MCC must do or provide during the period of pre-conviction detention. If Janis is convicted, any further claims of denial of access to the courts would have to be raised in a § 1983 action. We will address each of Janis' complaints in turn.

## I. DISCUSSION

█ Inmates have a constitutional right to adequate, effective and meaningful access to the courts. *Bounds*, 430 U.S. at 822, 97 S.Ct. at 1495. The right of access is protected by the First Amendment right to petition for redress of grievances and the Fourteenth Amendment right to procedural and substantive due process. *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir.1986). The government argues that an inmate's right of access does not include access for the prosecution of a civil action. The government relies on *Toussaint v. McCarthy*, 918 F.2d 752 (9th Cir.1990), in which the Ninth Circuit stated in dicta that an inmate's right of access to the courts extended only to claims concerning his conviction, habeas corpus actions, pending criminal indictments, extradition proceedings, and claims concerning conditions of confinement, i.e., civil rights actions. 918 F.2d at 755. However, the government fails to note that the *Toussaint* opinion at 918 F.2d 752 was amended and superseded by a later opinion published in the same case at 926 F.2d 800 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 213, 116 L.Ed.2d 171 (1991). The later opinion omits the dictum cited by the government. *See*, 926 F.2d at 804–805. The Ninth Circuit's withdrawal of the above-cited language leaves undecided in this circuit the question of whether access to the court includes general civil litigation. This court adopts the reasoning of the Fifth and Eleventh Circuits and Judge Wiggins in dissent in both *Toussaint* opinions. The constitutional right of access to the courts includes access to the courts for general civil legal matters. *Toussaint v. McCarthy*, 926 F.2d 800, 809–10 (9th Cir.1991) (Wiggins, J., dissenting); *Straub v. Monge*, 815 F.2d 1467, 1470 (11th Cir.), *cert. denied*, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987); *Jackson*, 789 F.2d at 311. The Fifth Circuit has held that the right of access includes, but is not limited to, divorce and small civil claims. *Corpus v. Estelle*, 551 F.2d 68, 70 (5th Cir. 1977). *But see, Ward v. Kort*, 762 F.2d 856, 860–61 (10th Cir.1985).

In *Jackson v. Procunier*, the Fifth Circuit stated,

> "[I]t is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances." That right has also been found in the fourteenth amendment guarantees of procedural and substantive due process. Consequently, interference with access to the courts may constitute the deprivation of a substantive constitutional right, as well as a potential deprivation of property without due process, and may give rise to a claim for relief under § 1983. Any deliberate impediment to access, even a delay of access, may constitute a constitutional deprivation.
>
> The defendants argue that a prisoner's right of "adequate, effective, and meaningful" access to the courts, as recognized by the Supreme Court in *Bounds v. Smith*, is limited to the presentation of constitutional, civil rights, and habeas corpus claims. As we have recently said, obiter dicta, in *Morrow v. Harwell*, [768 F.2d 619 (5th Cir.1985),] the *Bounds* opinion was primarily concerned with constitutional and civil rights claims and with the minimum legal resources that prisons must provide to inmates to ensure effective access to the courts. Recognition of the constitutional right of access to the courts, however, long precedes *Bounds*, and has from its inception been applied to civil as well as constitutional claims. Almost eighty years ago, in *Chambers v. Baltimore & Ohio Railroad Co.*, [207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907),] the Supreme Court recognized this right of access in the context of a diversity tort suit, founding the right on the privileges and immunities clause....

*Jackson*, 789 F.2d at 310–11 (citations omitted). In *Toussaint*, Judge Wiggins adopted the reasoning of the Fifth and Eleventh Circuits stating, "A citizen's general constitutional right of access to the courts encompasses access for all civil and criminal matters. There is nothing in the custodial setting of a prison that warrants interpreting an inmate's right of access any more narrowly." *Toussaint*, 926 F.2d at 809 (Wiggins, J., dissenting) (citations omitted).

## A. Access to Library

■ "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. The MCC has chosen to provide a law library for inmates' use. There is no evidence before the court that the MCC provides legal assistants. If the library is constitutionally adequate, then the prison is not also required to provide the inmates with legal counsel. *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 856 (9th Cir.1985). "*Bounds* requires only 'adequate law libraries *or* adequate assistance from persons trained in the law,' not both." *Cepulonis v. Fair*, 732 F.2d 1, 6 (1st Cir.1984) (quoting *Bounds*, 430 U.S. at 828, 97 S.Ct. at 1498) (emphasis in original).

■ At the motion hearing, Janis stated that he was currently being provided with six hours of library time per week. One of his more recent filings alleges that he has been receiving substantially less time. Janis' motion to represent himself in the criminal case in this district has been granted and his former attorney has been appointed as standby counsel. The constitution does not guarantee inmates unlimited access to a law library. *Lindquist*, 776 F.2d at 858. However, because Janis is representing himself, he will need more library time than an inmate represented by an attorney. He does, however, have standby counsel upon whom he could rely for some of his research. The court orders that the MCC provide Janis with at least two hours of library time five days per week if Janis requests such time. Preceding his motion and trial dates, the MCC should provide Janis with additional library time. *See*, 28 C.F.R. § 543.11(i) (1991). (Requiring warden to give special time allowance to inmate facing imminent court deadline.)

## B. Library Holdings

■ "[T]he Prison need not provide its inmates with a library that results in the best

possible access to the courts. Rather, the Prison must provide its inmates with a library that meets minimum constitutional standards." *Lindquist,* 776 F.2d at 856. The scope of the library holdings need not exceed the scope of the constitutional concept of access to the courts. The right of access to the courts is strongest when the inmate's underlying claims relate to the validity of his conviction and sentence or the deprivation of his fundamental constitutional rights. *Cofield v. Ala. Public Service Comm'n,* 936 F.2d 512, 517 (11th Cir.1991). The MCC is "not required to adopt every proposal that may be thought to facilitate prisoner access to the courts." *Procunier v. Martinez,* 416 U.S. 396, 420, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974).

The MCC law library does not provide materials for civil research, other than American Jurisprudence (2nd). If there were sufficient information about the pending civil actions in the record, the court would be required to weigh "the extent to which that right [of access] is burdened by a particular regulation or practice ... against the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials." *Id.*

■ Janis has informed the court that he has approximately sixty-seven (67) civil actions pending. The present record does not allow the court to determine what Janis' research needs are with regard to his civil cases. The record does not reflect the nature or stage of the pending civil actions or the jurisdictions in which these actions are pending. The court cannot, based upon the record before it, order any particular relief with regard to Janis' right of access in these civil actions. However, it must be kept in mind that Janis' constitutional right of access to the courts includes these actions as well as the criminal and civil rights actions. If Janis reasonably requests research materials necessary to litigate these actions, the MCC should consider obtaining those materials on

a temporary basis from another library. *See, Toussaint,* 926 F.2d at 810 n. 2.

Turning now to Janis' criminal proceedings, Janis' counsel [1] represented to the court that he had personally visited the MCC law library and that the library contained, contrary to Janis' assertions, complete up-to-date sets of the Federal Reporter Federal Supplement, United States Code Annotated, Shepards; and American Jurisprudence in addition to other research tools. Janis' counsel stated that, in his opinion, the library contained the books necessary to research federal criminal matters. Thereafter, Janis filed a statement specifying deficiencies in the above-listed collection.

■ On October 23, 1992, this magistrate judge personally examined the law library at the MCC. In general, the library has the basic materials necessary to research federal criminal cases. However, certain volumes are not up to date. The following volumes are missing pocket part updates: 21 U.S.C.A. §§ 801–950; 18 U.S.C.A. §§ 1951–2310; 18 U.S.C.A. §§ 3001–3330; 18 U.S.C.A. §§ 3331–4120; 18 U.S.C.A., Rules of Criminal Procedure 1–11; 18 U.S.C.A., Rules of Criminal Procedure 12–17.1; 18 U.S.C.A., Rules of Criminal Procedure 18–31; U.S.C.A. Constitution, Amendment 5; Amendment 6 (has only 1991 pocket part); Amendment 7–14; and 28 U.S.C.A., Rules of Evidence 1–700. Additionally, 21 U.S.C.A. §§ 801–950 is missing pages 100–127 which contain Sections 830–841. The defendant is charged with violation of Section 841. These volumes must be updated and a replacement for 21 U.S.C.A. §§ 801–950 obtained forthwith.

Janis also complains of lack of other materials. While some criminal procedure treatises were out of date, the library shelf description states that the San Diego Federal Defenders Manual is in the library. This volume could not be found. The Ninth Circuit CJA Problems Committee recently recommended that this manual, entitled "Defending a Federal Criminal Case" be made available to all CJA attorneys. The Director of the San Diego Federal Defender's Office

---

**1.** Janis was represented by counsel, Frank Murphy, III, at the motion hearing. He was not granted leave to represent himself until later

when the court appointed Mr. Murphy as standby counsel.

will provide this manual without cost to the MCC law library. This manual would alleviate any deficiency from out of date criminal procedure treatises. The above deficiencies must be alleviated to provide effective access to the courts. This directive requires the MCC to comply with 28 C.F.R. 543.11(b) (1991). (Requiring wardens to periodically ensure that the law library materials are kept intact and that lost or damaged materials are replaced.)

The MCC law library does not contain any California or other state law reporters or statutes. The California state criminal proceeding against Janis is in abeyance pending sentencing and charges for failure to appear for sentencing. The Nevada and Washington state criminal proceedings are presently suspended pending the resolution of the federal case. Janis is entitled to any materials relevant to his sentencing proceedings in the California state court. If Janis reasonably requests such materials, the MCC can and should obtain those materials for him from another library. *See, Toussaint,* 926 F.2d at 810 n. 2. He may also wish to move the Nevada and Washington courts for a speedy trial. That motion, however, would be based upon the Sixth Amendment to the United States Constitution and the Interstate Agreement on Detainers, 18 U.S.C. App. 2 § 2, and those materials are available in the MCC law library. In addition, Janis can apply for counsel from California, Washington and Nevada to aide him in his out-of-state criminal matters.

■ Janis has further stated that he has an extensive law library at his home and requested that he be permitted to have books sent to him from home. To protect against incoming contraband, inmates can receive hardcover books only from a publisher, book club or bookstore. However, they can receive softcover material from any source. 28 C.F.R. § 540.71(a). At the hearing on Janis' motion, a representative of the MCC stated that if the hardcovers are removed, books from Janis' personal law library could be sent to him. The court orders that Janis be permitted to have in his cell his copies, with the covers removed, of the following U.S.C.A. Volumes: (1) Title 21, (2) the Fourth, Fifth

and Sixth Amendments, (3) Title 18 covering the Federal Rules of Criminal Procedure, and (4) Title 28, the Federal Rules of Evidence. These comprise a total of thirteen volumes. Having these materials in his cell will further assist Janis in representing himself. Janis can have further legal materials sent to him provided the hardcovers are removed and cell space limitations are not exceeded, *see,* 28 C.F.R. § 543.11(d) (1991). This must be left to the sound discretion of the warden under § 543.11(d).

### C. Typewriters

The constitution does not require that typewriters be made available to inmates. *Lindquist,* 776 F.2d at 858. The MCC has, however, agreed to provide ribbons for the typewriters that it presently makes available to inmates. Given the flow of typewritten motions and papers recently received from Janis, it appears that the MCC is providing adequate access to working typewriters. The issue is, therefore, moot.

### D. Telephone Calls

Janis' standby counsel did not state that he needed more time to talk with Janis than had been provided. He stated that he had received several telephone calls from Janis. Moreover, Janis can meet with his advisory standby attorney at MCC and he has done so. Janis complains that the meetings with his attorney at the prison were not private because they were conducted in a general visiting room where other prisoners were also meeting with their attorneys. The MCC represented that it had rooms available on the third floor for private consultation between inmates and their attorneys. Janis further complains that phone calls to investigators and witnesses are monitored.

■ The Warden has the authority to establish procedures for monitoring inmate calls to all persons except attorneys. 28 C.F.R. § 540.101 (1991). Pursuant to 18 U.S.C. § 3142(i)(3), the MCC must provide Janis with a reasonable opportunity for private consultation with his counsel. In order to effectively represent himself, Janis must also be able to communicate confidentially with his investigator. The court orders that

the MCC allow Janis to conduct private, in-person consultations with his attorneys in all pending litigation and with the court appointed investigator working on the criminal case pending in this district. The MCC is further ordered not to disclose the contents of any taped or recorded telephone conversation between Janis and his attorneys, investigators or witnesses without further order of the court. The MCC may disclose the conversations internally, only if necessary, for security of the institution. If the MCC believes that such tapes must be disclosed for some other purpose, it may apply to the court for an order allowing such disclosure. This procedure will permit Janis to conduct witness interviews and converse with investigators and counsel without fear that the substance of the conversations will find their way to the prosecution.

Because the court has ordered that Janis be given extensive personal contact with his attorney and investigator and that the contents of those conversations not be disclosed without further court order and because the court finds that this will meet his needs in preparing for his case, the court does not reach the issue today as to whether Janis is entitled to unmonitored telephone calls to investigators and witnesses. The court does note, however, that 28 C.F.R. § 540.101 provides that the MCC may not monitor a "properly placed call to an attorney". The Warden must notify the inmates of the "proper procedures to have an unmonitored telephone conversation with an attorney". *Id.* 28 C.F.R. § 540.102 provides that, "The Warden may not apply frequency limitations on inmate telephone calls to attorneys when the inmate demonstrates that communication with attorneys by correspondence, visiting, or normal telephone use is not adequate". On the present record, and with the above nondisclosure order in mind, Janis has reasonable opportunity to consult with his standby counsel without the need for constant resort to unmonitored calls. If the procedure set forth by the court is insufficient, Janis may apply for unmonitored calls under 28 C.F.R. § 540.102. The court further notes that it will accept collect calls from Janis to this chambers to discuss *only* the

setting of dates or other matters before Judge Moskowitz.

### E. Mail

Janis contends that, although indigent, he has been denied stamps with which to mail documents to the court. At the hearing, the MCC representative indicated that the MCC would provide stamps for mail to the court. Under 28 C.F.R. § 540.21(d), an inmate who does not have funds for postage is entitled to have the MCC provide postage for reasonable mailing of legal matter to courts and attorneys. The MCC is ordered to comply with this regulation.

Janis also contends that the guards have been reading his mail by shining a flashlight through the envelopes. The regulations provide that incoming mail may be opened, inspected and read unless it is marked "Special Mail—Open only in the presence of the inmate." 28 C.F.R. § 540.18(a) & (b) (1991). Special mail is required to be opened for inspection for contraband only in the presence of the inmate. *Id.* Properly marked correspondence from attorneys is considered "special mail." Janis has not provided sufficient evidence for the court to find that this regulation is presently being violated by the MCC.

### F. Runner and Paralegal Assistance

█ Since the court holds that on the record before it, upon the required updating, the library is constitutionally adequate, the MCC is not also required to provide legal research assistants. Additionally, Janis has the assistance of Mr. Murphy, his standby and advisory counsel to assist him in legal research. His request for paralegals is therefore denied. Janis does not need a runner to file documents with the court because his access to the court through the mail and his investigator is sufficient. His request for a runner is also denied.

Janis further requests additional funds for investigation. District Judge Turrentine previously authorized $3000 for investigation. If those funds have been expended or shortly before that time, Janis may apply *ex parte* to Judge Turrentine for additional funds under the Criminal Justice Act.

### G. Photocopies

 Regulations require that inmates bear the cost of duplicating legal documents unless the cost is waived by prison staff. 28 C.F.R. § 543.11(g) (1991). "Staff may waive the cost if the inmate is without funds or if the material to be duplicated is minimal, and the inmate's requests for duplication are not large or excessive." *Id.* Janis is not entitled to free copies of research materials. His need to copy such materials should be greatly diminished, if not eliminated, by this court's order that he be given additional library time and permitted to have the above-listed volumes in his cell. Janis, as a *pro se* criminal defendant, can apply to the court under the Criminal Justice Act for reimbursement for reasonable and necessary photocopying expenses related to his trial. *United States v. Feldman,* 788 F.2d 625 (9th Cir.1986); 18 U.S.C. § 3006A(d)(1) (1992).

Janis has informed the court that he needs to make eleven copies of a 220-page appellate brief to be filed in the Ninth Circuit. If Janis was permitted to proceed in forma pauperis in the district court then he may proceed in forma pauperis on appeal unless the district court certifies that the appeal is not entitled to so proceed or the appeal is not taken in good faith. If he was not proceeding in forma pauperis in the district court, he may file a motion to proceed in forma pauperis with the court of appeals. Fed. R.App.P. 24(a). Parties proceeding in forma pauperis may file briefs, appendices and other papers in typewritten form and may request that the appeal be heard on the original record without any need to copy parts thereof. Fed.R.App.P. 24(c). Parties proceeding in forma pauperis and not represented by counsel, must comply with page limits on briefs, but need only file an original and seven copies of each brief. Ninth Cir. Rule 31–1. Principal appellate briefs shall not exceed fifty (50) pages and reply briefs shall not exceed twenty-five (25) pages. Fed. R.App.P. 28(g). Unless Janis receives permission from the Court of Appeals, he can not blame the MCC for not agreeing to make excessive copies of a brief 170 pages over the page limitation. His motion to compel such copies is denied without prejudice.

### II. CONCLUSION

Janis' motion is granted in part and denied in part. The MCC is ordered to provide Janis with additional library time as set forth in this Memorandum Decision, allow him to have in his cell certain above-listed sections of the U.S.C.A. with the hardcovers removed, and provide him with a place for private, in-person consultation with his attorneys and investigator. The MCC is ordered not to disclose recordings of Janis' telephone conversations with witnesses, investigators or counsel in any case except internally when necessary for institutional security or on further order of a court of competent jurisdiction. The MCC is also to comply with the requirements of 28 C.F.R. § 540.21(d). The MCC is also ordered to forthwith update the law library as required in this decision.

IT IS SO ORDERED.