37 F.3d 1505
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Robert Lucia HOOD, Plaintiff-Appellant,
v.
Rayburn EVANS, et al., Defendants-Appellees.
 No. 92-15549.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 13, 1994.*
Decided Sept. 28, 1994.
 
 Before: GOODWIN, POOLE, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Robert Lucia Hood, an Arizona state prisoner, appeals pro se the summary judgment in favor of the defendant county jail officials in his 42 U.S.C. Sec. 1983 action alleging multiple violations of Hood's constitutional rights during his pretrial custody at the La Paz County Jail ("LPCJ"). In his amended complaint, Hood sought, inter alia, a declaratory judgment, injunctive relief, compensatory and punitive damages, and trial by jury. We affirm all elements of the district court's judgment except one. We reverse the district court's summary judgment in favor of the defendant La Paz County prison officials on Hood's conditions of confinement claim.
 
 I. Excessive Bail Claim
 
 3
 Hood's first claim is that the district court erred in finding that he was not denied due process by having bail set beyond his ability to pay. However, Hood fails to set forth the amount of bail. Although the Eighth Amendment prohibits "excessive bail," it is well settled that bail is not excessive merely because the defendant is unable to afford the amount set. White v. Wilson, 399 F.2d 596, 598 (9th Cir.1968). The record indicates that Hood presented no evidence to the district court that his state court bail amount was greater than that required to assure his presence at trial. See United States v. Salerno, 481 U.S. 739, 752-753 (1987). Accordingly, the district court properly granted summary judgment on this claim.
 
 
 4
 II. Unconstitutional Monitoring of Communications Claim
 
 
 5
 Hood's second claim is that the district court improperly granted summary judgment to the defendants on Hood's allegations that his communications were unconstitutionally restricted and monitored. It is fundamental that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). The Supreme Court, however, "has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." Thornburgh v. Abbott, 490 U.S. 401, 408 (1989).
 
 
 6
 Hood contends that the defendants: (1) provided inadequate space for inmates to have private conversations with their attorneys, and monitored Hood's own communications with his attorney; (2) offered other inmates money to eavesdrop on Hood's phone calls and conversations; (3) opened his personal and legal mail outside of his presence, and censored and delayed his mail; and (4) denied Hood visitation rights.
 
 
 7
 By deposition, Hood testified that there was only one small attorney-client meeting room at the jail. This room was often in use when Hood met with his attorney, forcing them to speak in a hallway in the presence of prison officials. However, Hood was unable to specify any conversations that were actually overheard, and he proffered no evidence that this alleged lack of privacy infringed his right to effective assistance of counsel.
 
 
 8
 Several of the prisoners' affidavits submitted by Hood support Hood's second claim that fellow prisoners were offered money and leniency to eavesdrop on him. However, "[i]n order to establish a violation of the Sixth Amendment in a jailhouse informant case, the accused must show (1) that a fellow inmate was a government agent; and (2) that the inmate deliberately elicited incriminating statements from the accused." Lightbourne v. Dugger, 829 F.2d 1012, 1020 (11th Cir.1987), cert. denied, 488 U.S. 934 (1988) (citing United States v. Henry, 447 U.S. 264, 270 (1980)). Even though Hood has raised an issue of fact that an inmate was recruited to spy on him, he has produced no evidence of the second element that any of the LPCJ prisoners deliberately elicited any incriminating statements from Hood.
 
 
 9
 In regard to Hood's third claim, a prison mail policy does not violate the Constitution if "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. A review of the record demonstrates that Hood has failed to produce evidence suggesting that the Jail's policy of reading and inspecting his incoming mail was unrelated to a legitimate penological interest.
 
 
 10
 Finally, the record is devoid of any evidence discussing Hood's fourth claim that he was denied visitation rights, aside from the conclusory statements in Hood's complaint and motion papers. The district court therefore did not err in dismissing this claim on the defendants' motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (conclusory allegations, without more, cannot withstand a summary judgment motion).
 
 
 11
 III. Unconstitutional Conditions of Confinement Claim
 
 
 12
 Hood's third claim is that the district erred in granting summary judgment to the defendants on Hood's conditions of confinement claims. Hood alleges that the following conditions at the LPCJ violated his constitutionally protected rights: (1) overcrowded cells; (2) inadequate and unsanitary shower facilities (including having to shower in front of female guards and inmates); (3) lack of access to cleaning materials, which created unsanitary conditions in general; (4) inadequate heating, cooling, and ventilation; (5) failure to provide adequate clean clothing and bedding; (6) inadequate opportunities for exercise; (7) inadequate and poorly prepared food; (8) confinement in a cell with drug addicts and mentally ill prisoners; and (9) lack of access to current legal materials.
 
 
 13
 In a claim brought under Sec. 1983 for unconstitutional prison conditions, a plaintiff must show that the defendants were "deliberately indifferent" to constitutional violations. Wilson v. Seiter, 111 S.Ct. 2321, 2326-37 (1991). In contrast to the prisoners in Wilson v. Seiter, who based their Sec. 1983 action on the Eighth Amendment's prohibition against cruel and unusual punishment, here Hood grounds his Sec. 1983 action on the Fourteenth Amendment's due process requirement that pretrial detainees be free from all punishment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). Nevertheless, Hood still must produce at least circumstantial evidence of a culpable state of mind on the part of the La Paz County Jail officials in order to prevail against the defendants' motion for summary judgment. Farmer v. Brennan, 62 U.S.L.W. 4446 (U.S. June 6, 1994), vacating and remanding 11 F.3d 668 (7th Cir.1992) (holding that the standard for "deliberate indifference" is a subjective one); Wilson v. Seiter, 111 S.Ct. at 2326 (noting that an intent requirement is implicit in the word "punishment").
 
 
 14
 In evaluating an Eighth Amendment claim based on conditions of confinement, we have held that a court must look at each alleged condition individually, and not at the totality of conditions. Hoptowit v. Ray, 682 F.2d 1237, 1246-47 (9th Cir.1982). "Some conditions of confinement may establish an eighth amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson v. Seiter, 111 S.Ct. at 2327; see also Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987) (noting the different analytical frameworks for related and unrelated conditions of confinement claims). However, none of the conditions alleged by Hood could be classified as having a "mutually enforcing effect."
 
 Here, the district court found that
 
 15
 Hood has not provided any evidence to show the Defendants were deliberately indifferent to the conditions of which he complains. Indeed, Hood admits the Defendants took steps to improve the overcrowding, plumbing and ventilation problems at the jail. Thus, Hood has not merely failed to produce evidence of deliberate indifference, he has admitted the existence of circumstances demonstrating the Defendants were not deliberately indifferent.
 
 
 16
 In addition, the district court found that Hood did not provide evidence of an affirmative link between any of the defendants' conduct and the injuries of which he complains. During his deposition, Hood discussed the defendants only in general terms as having been on duty when the alleged deprivations occurred. The affidavits of former LPCJ inmates submitted by Hood failed to state any facts linking the allegedly unconstitutional conditions to particular defendants. In fact, the affidavits failed to mention any defendant at all.
 
 
 17
 Nevertheless, we find that the district court erred in granting summary judgment in favor of the prison officials on this claim. The district court focused too heavily on the facts that Hood could not specifically finger any one defendant and that there was no direct evidence of an intent to punish Hood on the part of the prison officials. Supreme Court precedent and the precedent of this Circuit are not so inflexible. We have held that the relevant inquiry is not whether any specific individual defendant injured the pretrial detainee, but whether the injury resulted from "county policies or customs," either formal or informal. Redman v. County of San Diego, 942 F.2d 1435, 1444 (9th Cir.1991) (en banc).
 
 
 18
 The Supreme Court in Bell v. Wolfish held that, "if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." 441 U.S. at 539. Although the Supreme Court more recently in Wilson v. Seiter reemphasized the requirement that an inmate show a culpable state of mind on the part of prison officials in order to prove that those officials were deliberately indifferent, the Court noted that "the long duration of a cruel prison condition may make it easier to establish knowledge and hence some form of intent." 111 S.Ct. at 2325 (emphasis in original).
 
 
 19
 We recently held in Jordan v. Gardner, 986 F.2d 1521 (9th Cir.1993) (en banc), that a prison's policy requiring random, non-emergency, clothed body searches of female prisoners by male guards was cruel and unusual punishment. In so holding, we declared that
 
 
 20
 [w]hen, as here, officials formulate a policy in circumstances where there are no particular constraints on the officials' decisionmaking process, and the implementation of the policy will inflict pain upon the inmates on a routine basis, we need not look for a showing of action taken "maliciously and sadistically" before Eighth Amendment protections are implicated.
 
 
 21
 Jordan v. Gardner, 986 F.2d at 1528.
 
 
 22
 In Jordan, we endorsed the view that knowledge on the part of prison officials of a risk of harm to inmates, combined with no penological interest that justified continuing to expose inmates to the specific harm and a failure by prison officials to act to prevent that harm, constitute deliberate indifference. Jordan, 986 F.2d at 1529. Here, the prison officials may have been constrained for security reasons to require detainees to shower and relieve themselves in the open. However, the defendants offered no such reasons, and no reasons come to mind, to justify the prison conditions alleged by Hood of, inter alia, overcrowding, unsanitary conditions, and poor ventilation.
 
 
 23
 Furthermore, many of the poor prison conditions detailed by Hood at the LPCJ appear to be chronic in nature. Although the affidavit of Captain Hal Collett, an employee of the LPCJ at the time of Hood's detention, assured the district court that La Paz County prison officials intended to improve or were improving conditions at the Jail, no evidence was presented regarding the end result of those intentions. Without such evidence before the district court, factual issues remained regarding the duration of the alleged poor prison conditions and whether the prison officials truly improved those conditions to the point where all known substantial risks of serious harm to the inmates were eliminated. These are factual questions from which a jury could infer that the defendant prison officials intended to inflict punishment upon Hood and other LPCJ detainees.[1] Thus, summary judgment was improper on this claim. We note that this may be a proper case for the district court to request counsel for the plaintiff-appellant pursuant to 28 U.S.C. Sec. 1915(d).
 
 
 24
 Finally, Hood claims that he was denied access to up-to-date legal materials during his detention at the LPCJ. This claim is meritless. Hood admitted at his deposition that he was represented by counsel during his detention at the LPCJ, hence the Jail's duty to provide him with meaningful access to the courts was satisfied. Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 854 (9th Cir.1985).
 
 
 25
 V. Deliberate Indifference to Medical Needs Claim
 
 
 26
 Hood's final claim is that the district court erred in finding that the medical treatment provided him during his confinement complied with the requirements of the Eighth Amendment. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that the Eighth Amendment is violated when there has been "deliberate indifference to serious medical needs." However, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1982).
 
 
 27
 The district court rejected Hood's claim because the prison officials provided Hood treatment, and Hood did not suffer permanent injury as a result of the alleged delay. The record supports this conclusion. Hood testified at his deposition that he saw a doctor within a week after his first request. The doctor examined Hood's burn and prescribed an ointment for him to apply several times a day. When sores later began to spread over Hood's body, the prison officials took him to an outside clinic where a biopsy of his skin condition was taken. After a fire extinguisher was discharged in his cell, Hood again requested medical treatment, which he received "a few days later."
 
 VI. Conclusion
 
 28
 The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Supreme Court's recent holding in Farmer v. Brennan, 62 U.S.L.W. 4446 (U.S. June 6, 1994), vacating and remanding 11 F.3d 668 (7th Cir.1992), supports our conclusion. While the Supreme Court made clear that actions alleging "deliberate indifference" on the part of prison officials "must satisfy a 'subjective' requirement," id. at 4449, the Court explained that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id. at 4451