**Vladimir ZATKO, Plaintiff,**

v.

**James ROWLAND, et al., Defendants.**

**Nos. C 90–3035 BAC, C 90–3172 BAC.**

United States District Court,
N.D. California.

Oct. 22, 1993.

Vladimir Zatko, pro se.

Paul Gifford, Atty. Gen., State of Cal., San Francisco, CA, for defendants.

### ORDER

CAULFIELD, District Judge.

### INTRODUCTION

On October 12, 1991, two consolidated actions, C 90–3035 BAC and C 90–3072 BAC, were reassigned to this court. The plaintiff, Vladimir Zatko, has since filed more than 63 papers concerning these matters alone. Zatko, presently a prisoner in Corcoran State Prison, has been and continues to be a noto-riously vexatious litigant. Subject to pre-filing review in the Northern District since 1973,[1] Zatko was originally permitted to file this 42 U.S.C. § 1983 action after the court found 20 of the 64 alleged claims cognizable in the Northern District. The court also granted plaintiff's request to proceed *in forma pauperis,* and ordered the defendants to file a special report.

### ORIGINAL COMPLAINT

■ 1. *Freedom of Religion.* Zatko claims to be prohibited from attending group religious services in violation of his First Amendment rights. Such a prohibition is not unconstitutional if reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987) (citing *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Defendant persuasively argues such an interest exists. Zatko, a Security Housing Unit ("SHU") inmate (previously) at Pelican Bay State Prison ("PBSP"), is in the most dangerous class of prisoners in California's state prison system. To allow such a prisoner access to the general population and/or other SHU inmates would constitute an unacceptable risk to the safety of everyone concerned. Moreover, Zatko may worship by other means such as choosing a religious advisor from one of many denominations or possessing religious literature in his cell.

■ Because a very legitimate penological interest is at issue, the policy prohibiting plaintiff from attending group religious services is justified. When factual allegations or legal conclusions lack an arguable basis in law or fact, they are frivolous. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). This claim lacks a legal basis, hence, it is frivolous and must be DISMISSED.

■ 2. *Access to Law Library.* Zatko claims that pursuant to defendant Rowland's general policy he has been denied access to the law library. Prisoners have a constitu-

---

1. He is also subject to prefiling review in the Eastern District of California and other United States districts. As of June 25, 1993, the WEST-LAW Supreme Court database listed 85 cases with Zatko as petitioner or plaintiff.

tional right to meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); *Sands v. Lewis,* 886 F.2d 1166, 1168 (9th Cir.1989). Furthermore, inmates must be given reasonable time to utilize the library. *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 858 (9th Cir.1985).

■ SHU inmates at PBSP may use the law library two hours per week. Twenty-four inmates are allowed in the library at once between 7:30 a.m. and 3:30 p.m., daily. Admittance is granted by sign-up on a first come, first served basis. If an inmate has an impending court deadline, he is entitled four hours per week, and placed at the head of the list. Further, an inmate may request that specific materials be copied and delivered to his cell.

These time allotments are reasonable as a matter of law. The court acknowledges that most inmates have difficulty traversing the unfamiliar field of law, but must balance against this the weightier resource and disciplinary interests of the prison system. Thus, this claim must be DISMISSED as legally frivolous under *Neitzke.*

■ 3. *Attorney Visits.* Zatko claims that Rowland's policy regarding visitation prevented him from leaving his cell to visit his attorney. Such a policy would violate Zatko's right to meaningful access to the courts. *See Ching v. Lewis,* 895 F.2d 608 (9th Cir.1990). However, according to both Mr. Lopez' declaration, and Zatko's own deposition testimony, there is no policy restricting his access to counsel. Rather, plaintiff admitted in his deposition that he chose not to visit with his attorney because he was experiencing back pain which impeded his ability to walk. Thus, this factually frivolous claim is DISMISSED under *Neitzke.*

■ 4. *Exercise.* Zatko claims that he has been denied the opportunity to leave his cell for exercise. The denial of outdoor exercise could violate the Eighth Amendment. *Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir.1979). However, in commending the PBSP on its "admirable" exercise policy, Zatko testified during his deposition that he is given the opportunity to leave his cell to exercise every morning. This claim is clearly frivolous and must be DISMISSED under *Neitzke.*

■ 5. *Homicidal Cellmate.* Zatko claims he has been deliberately celled at PBSP with a proven killer and sexual deviant who tortures and rapes him, and forces him to perform oral copulation. If true, Zatko would have a claim based on a "deliberate indifference" theory. *See Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986). Again, however, Zatko's testimony reveals his claim to be factually frivolous. He admitted during his deposition to never being double-celled at PBSP. Thus, this claim is DISMISSED under *Neitzke.*

■ 6. *Medical Treatment.* Zatko complains he was refused proper medical attention at PBSP for his broken jaw. Deliberate indifference to serious medical needs can violate the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). To state a § 1983 claim, one must demonstrate sufficient harm from a deliberate act or omission, not merely a physician's negligence. *Id.* at 106, 97 S.Ct. at 292. Similarly, the Ninth Circuit has held that a difference of opinion as to treatment between a prisoner-patient and a prison physician does not constitute a § 1983 claim. *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.1989).

■ The evidence herein does not sustain a § 1983 claim. The attendant doctors' declarations show overwhelmingly that Zatko refused the necessary treatments, was totally noncompliant, and otherwise impeded his own recovery in numerous ways. Further, Zatko makes no showing of specific harms due to deliberate indifference.

*Hutchinson v. U.S.* held that deliberate indifference may be manifested in two ways: prison official's denial, delay or intentional interference with medical treatment, or, in the way prison physicians provide medical care. *Hutchinson v. U.S.,* 838 F.2d 390, 394 (9th Cir.1988). As neither manifestation has been evidenced, this claim is DISMISSED as factually frivolous under *Neitzke.*

7. *Psychiatric Care.* Zatko claims the psychiatric care required for him to be considered by the Board of Prison Terms for parole is unavailable at PBSP. He also claims his requests for such care have been refused. Deliberate indifference to a prisoner's mental health problems is a violation of the Eighth Amendment. *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir.1982).

The defendants' special report did not address this issue. However, in his petition for habeas corpus, C 90–3062 BAC, Zatko annexed an excerpt from an internal prison record which indicates he has refused to participate in a psychiatric evaluation since August 15, 1977. This evidence directly conflicts with Zatko's contention that he has been denied psychiatric care. This claim is therefore DISMISSED as factually frivolous under *Neitzke*.

8. *Sunlight.* Zatko claims to have a virtually sunless existence at PBSP. The Eighth Amendment proscribes the unnecessary and wanton infliction of pain, which includes any punishment incompatible with the evolving standards of decency that mark the progress of a maturing society. *Hoptowit*, 682 F.2d at 1246. However, a review of Zatko's deposition transcript reveals that the amount of sunlight he receives depends not on the actions of defendants, but the weather. Accordingly, this claim is DISMISSED as factually frivolous.

9. *Inadequate Heating.* Zatko claims that cold air is blown into his cell, that the heating system is never used, and that his clothing provides inadequate warmth. Adequate heat, as a basic attribute of shelter, is an Eighth Amendment right. *Toussaint v. McCarthy*, 597 F.Supp. 1388, 1409 (N.D.Cal. 1984).

Defendant asserts that the thermostat controlled temperature in the SHU and staff offices averages 73 degrees, 24 hours a day.

Thus, this claim is DISMISSED as factually frivolous under *Neitzke*.

10. *Mechanical Restraints.* Zatko claims that his physical condition prevents him from cooperating with the painful mechanical restraints procedure inmates undergo upon leaving their cells. As a result, he alleges, they remove him by even more painful means. The Ninth Circuit has set standards for using mechanical restraints. Generally, three situations permit mechanical restraints: (1) if the inmate is to be transported out of the prison, (2) if the inmate is violent or prone to escape, and (3) if the inmate is suicidal. *Spain v. Procunier*, 600 F.2d 189, 196–99 (9th Cir.1979). The restraint must not inflict physical pain, undue physical discomfort, or restrict blood circulation or breathing. *Id.*

Defendant contends that plaintiff does not experience undue pain when subjected to mechanical restraints.[2] Therefore, plaintiff's claim is DISMISSED because Mr. Zatko's security status and history of violence makes him eligible for mechanical restraints.

11. *Stamps.* Zatko claims that defendant Marshall prohibits possession of postage stamps in the SHU and consequently confiscated Zatko's stamps upon his arrival from Tehachapi. If this alleged deprivation resulted from established state procedure, Zatko would have a Due Process claim.[3] *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982).

While it is true that stamps are not allowed in SHU cells (only embossed envelopes are allowed), the established policy does not mandate deprivation. Rather, if an inmate's stamps are confiscated, up to five are replaced with embossed envelopes, and the inmate has the opportunity to mail the excess home or to donate them to the state. Thus,

---

2. The Eighth Amendment proscribes the unnecessary and wanton infliction of pain. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir.1982).

3. Neither the negligent deprivation of property, *Parratt v. Taylor*, 451 U.S. 527, 535–44, 101 S.Ct. 1908, 1912–17, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*,

474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), nor the intentional deprivation of property, *Hudson v. Palmer*, 468 U.S. 517, 530–36, 104 S.Ct. 3194, 3202–05, 82 L.Ed.2d 393 (1984), states a claim under § 1983 if the deprivation was random and unauthorized.

even if a deprivation occurred, it would not have been authorized by established state policy. The claim is therefore DISMISSED as frivolous under *Neitzke*.

■ 12. *Inadequate Food.* Zatko claims that he is given insufficient food as punishment. Prisoners must be provided with the basic necessities of life, *i.e.*, adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Hoptowit*, 682 F.2d at 1246. However, Zatko admitted during his deposition that he has never been denied a meal as a form of punishment at PBSP. Accordingly, this claim is DISMISSED as factually frivolous.

■ 13. *Involuntary Drug Treatment.* Zatko claims that defendant Marshall authorized prison guards to administer temporarily paralyzing controlled substances to all prisoners resisting X-ray screening.[4] While a legal foundation may exist for this claim, it has no basis in fact. Zatko's deposition reveals that he has never undergone involuntary drug treatments at PBSP. This claim is therefore DISMISSED under *Neitzke*.

■ 14. *Privacy.* Zatko claims that unclothed body inspections are conducted within view of guards and inmates, that these searches are conducted and observed by female guards, and that close inspections of his penis are ordered in the presence of female guards. Even the limited right of privacy afforded a prisoner encompasses an interest in shielding his nakedness from the view of strangers, particularly those of the opposite sex. *York v. Story*, 324 F.2d 450, 455–56 (9th Cir.1963), *cert. denied*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964). Impingement upon this right must be reasonably related to a penological interest. *Michenfelder v. Sumner*, 860 F.2d 328, 333–34 (9th Cir.1988); *cf. Grummett v. Rushen*, 779 F.2d 491, 494–95 (9th Cir.1985) (assigned positions of female

guards that require only infrequent and casual observation, or observation at a distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference).

■ Defendants' special report regarding this issue states the relevant law of which the court is already aware. The Supreme Court held that the standard of review for such claims is whether the prison policies are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). *Turner* also held, however, that a relevant factor in determining "reasonableness" is "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90, 107 S.Ct. at 2262. There do not appear to be any. The claim is DISMISSED.

■ 15. *Body Cavity Searches.* Zatko alleges that SHU inmates are forced to perform digital rectal searches of themselves in the presence of guards. The Ninth Circuit has held that digital rectal searches violate inmates' constitutional rights unless they are related to a legitimate penological need.[5] *Tribble v. Gardner*, 860 F.2d 321, 324–27 (9th Cir.1988), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989).

■ Plaintiff alleges that defendant Marshall authorized the aforementioned searches.[6] This claim is DISMISSED because Mr. Zatko's security status and detention history causes a legitimate penological need for body cavity searches of his person and there is no legal support for his claim.

■ 16. *Toilet Paper.* Zatko maintains that he is not provided with an adequate supply of toilet paper. Prison officials must provide all prisoners with the basic necessi-

---

**4.** The court assumes Zatko has resisted on at least one occasion.

**5.** That this alleged practice is performed by inmates in the SHU officers' stead does not mitigate its illegality.

**6.** To implicate a defendant in a supervisory position, plaintiff must offer facts showing that defendant's failure to properly train or supervise per-

sonnel resulted in the alleged deprivation of constitutional rights, that the alleged deprivation resulted from official policy or custom for which defendant was responsible, or that defendant knew of the alleged misconduct and failed to act to prevent future misconduct. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680–81 (9th Cir.1984); *Taylor v. List*, 880 F.2d 1040 (9th Cir.1989).

ties of life, including proper sanitation devices. *Hoptowit*, 682 F.2d at 1246.

■ Plaintiff admitted in his deposition that he is given adequate toilet supplies. Hence, this claim is DISMISSED as frivolous under *Neitzke*.

■ 17. *Constantly Illuminated Cell.* Zatko claims his cell is constantly illuminated with bright light, depriving him of normal sleep. If true, this would violate his basic right to shelter. *See Hoptowit*, 682 F.2d at 1246. However, plaintiff admitted during deposition that correctional officers "try to accommodate the inmates [and do not] unnecessarily use the light to keep [him] awake." (Plaintiff's Depo., p. 14:15–26.) This admission makes plaintiff's claim frivolous under *Neitzke* and it is DISMISSED.

■ 18. *Deprivation of Property.* Zatko claims the prison limits its SHU inmates to two newspaper or magazine subscriptions and this limit effectively cancelled the subscriptions of inmates transferred into the SHU from other institutions which allowed more than two subscriptions.[7] As stated in section 11, such deprivation of property resulting from established state procedure may justify a Due Process claim. Whether such a claim has merit depends on the following four factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it; (2) whether prison inmates have alternate means of exercising the restricted right; (3) whether accommodating the prisoner's asserted constitutional rights would have a detrimental impact on guards and other inmates; and (4) whether there are ready alternatives. *Turner*, 482 U.S. at 89–90, 107 S.Ct. at 2261–62.

■ According to Lopez' declaration, the accumulation of personal property, including publications, inside a prisoner's cell increases the difficulty of searching for contraband and facilitates hiding weapons and weapons stock. Moreover, the accumulation of publications is a fire hazard. *Id.*

---

7. Plaintiff misstates the regulation. SHU inmates are allowed up to ten publications at one

Further, inmates may participate in the leisure reading program in which they can exchange published or written materials. This appears to be an adequate alternative by which prisoners may expand their scope of accessible reading materials. As there is no apparent ready alternative to this policy it must be considered reasonable. Consequently, plaintiff has no legal support for his claim and it must be DISMISSED under *Neitzke*.

■ 19. *Deprivation of Legal Materials.* Zatko claims that guards destroyed legal and attorney-client correspondence and confiscated his typewriter while searching his cell. As stated in section 18, if deprivation of property results from established state procedure, the prisoner states a § 1983 claim. There is, however, insufficient evidence to support plaintiff's allegations. In fact, it can be inferred from the enormous volume of material plaintiff has directed to this court that, even if this claim is genuine, plaintiff has suffered no injury. Furthermore, SHU inmates are prohibited from keeping plastic or metal products in their cell, hence, Zatko could not have had a typewriter. Plaintiff's claim is DISMISSED.

■ 20. *Confiscation of Religious Materials.* Zatko claims that his Bibles and religious materials have been confiscated and destroyed. As discussed in section 1, the First Amendment entitles prisoners reasonable opportunities to practice their religion.

During deposition, plaintiff admitted that he never possessed a Bible at PBSP. As plaintiff fails to specify what other religious materials were confiscated, this claim is DISMISSED.

### SANCTIONS

It is clear from a review of plaintiff's complaints in these matters, and plaintiff's deposition, that the allegations contained in plaintiff's complaints are factually untrue, and that there are material misrepresentations by the plaintiff. Plaintiff's appearance before this court *in forma pauperis*—like all

---

time in their cell. (Lopez Decl., p. 4, ¶ 14.)

others who appear before the court—is subject to Rule 11 sanctions. *Jackson v. Carpenter*, 921 F.2d 68, 69 (5th Cir.1991).

 Plaintiff's misrepresentation and abuse of the right to file a complaint in federal court denies other prisoners with legitimate complaints court time and consideration. Plaintiff's abuse of the court process began in 1973 and continues to the present—a period of 20 years with 85 cases filed. The court finds that Zatko's 20–year pattern requires more stringent pre-filing requirements. These requirements are:

(1) Zatko must submit a signed affidavit with each complaint, swearing under oath the truth of the facts which support the claims he makes in the complaint. If any fact in the Zatko affidavit is found to be a wilful misrepresentation, the claim will be dismissed and a sanction entered by the court.

(2) Zatko must further show by affidavit that he has complained internally to the proper prison authorities about any claim he makes in any complaint. The lack of an affidavit stating the truth of every fact under oath or the lack of a complaint to prison authorities will cause the court to dismiss the complaint. Zatko must wait until the complaint made to the prison authorities is processed and a finding completed before he files a complaint with this court. Zatko must file with the court a separate affidavit stating the history of his complaint to the prison authorities and the result of any complaint process.

The most tragic result of Zatko's practices is that he takes away the opportunity for prisoners with legitimate complaints to reach the courts.

Under the circumstances, and considering the history of plaintiff's litigation activities, the court views that an appropriate sanction is to require plaintiff to pay a $5 sanction for each misrepresented claim. In this matter Zatko filed 20 claims based on wilful misrepresentation. Zatko is fined $100.00.

### ORDER

For the foregoing reasons,

1. Plaintiff's claims are DISMISSED.

2. Plaintiff is hereby sanctioned one hundred dollars ($100.00) pursuant to Rule 11 of the Federal Rules of Civil Procedure for direct misrepresentation of facts in his complaint which he later contradicted in his own deposition testimony. The sanction is not for one or two incidents but for the 20 allegations in his complaints. Plaintiff must file a declaration setting forth his current financial condition with supporting independent proof if he claims he is unable to pay the sanction. No further filing by Zatko will be processed by this court until either the fine is paid, a payment schedule is set, or Zatko shows that he is completely without funds.

3. The Clerk of the Court is hereby directed to close cases C 90–3035 BAC and C 90–3172 BAC.

IT IS SO ORDERED.