Michael SHEPHERD, Jr., and Carl Edward Lennie, Plaintiffs,

v.

Warden John AULT, Lt. William Sperfslage, Larry Brimeyer, Russ Barrns, and c/o Mike Chessmere, Defendants.

No. C96–0222–MWB.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Nov. 12, 1997.

Jeffrey M. Lipman, Lipman Law Firm, P.C., Clive, IA, for Plaintiffs.

William A. Hill, Asst. Atty. Gen., Des Moines, IA, for Defendants.

MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

Diurnal creatures though they be, humans crave periods of darkness just as surely as they crave periods of light. Certainly, two prisoners craved a respite from the continuous illumination of their disciplinary detention cells at an Iowa prison enough to file this lawsuit pursuant to 42 U.S.C. § 1983. The prisoners allege that the constant lighting interfered with their ability to sleep to such an extent as to constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. They seek compensatory damages for and injunctive relief from the unconstitutional condition of confinement created by the continuous lighting of their cells. A magistrate judge filed a report and recommendation on the defendants' motion for summary judgment in which he concluded that the inmates' claims do not rise to the level of constitutional violations and recommended that the defendants' motion be granted. The inmates' objections to the magistrate judge's report and recommended disposition of their claims are now before the court.

The plaintiffs in this case were, at the times pertinent, inmates at the Anamosa State Penitentiary (ASP).[1] Their claims of constitutional violations are founded on their placement in cells lighted twenty-four hours per day by a sixty-watt lightbulb. The inmates claimed that if they covered the light, they would receive further disciplinary reports. The defendants, various prison officials, moved for summary judgment, asserting that the plaintiffs could not establish either the objective or subjective element of an Eighth Amendment claim, and, in the alternative, that they were entitled to qualified immunity.

On August 22, 1997, a magistrate judge of this district filed a report and recommenda-

1. The ASP was formerly known as the Iowa    Men's Reformatory (IMR).

tion pursuant to 28 U.S.C. § 636(b)(1)(B) in which he recommended that the defendants' motion for summary judgment be granted. The magistrate judge concluded that the prisoners had failed to establish a sufficiently serious deprivation of the minimal civilized measure of life's necessities, because they did not claim that they could not sleep, despite constant lighting, or that there was any serious harm to their health from a lack of sleep. He also concluded that the plaintiffs had failed to establish that the defendants had consciously disregarded a substantial risk of serious harm to the inmates' health or safety as the result of continuous lighting of their cells.

On September 8, 1997, the plaintiff inmates filed objections to the magistrate judge's conclusions, asking this court to overrule the magistrate judge and to allow this matter to proceed to trial. The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* — U.S. —, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir.1995) (also citing *Belk* ).[2] Although there is a presumption that the district court conducted the proper review, *see, e.g., Shelton v. Chater,* 87 F.3d 992, 996 (8th Cir.1996); *Hosna,* 80 F.3d at 306; *Grinder,* 73 F.3d at 795,

that presumption is "predicated on the district court's knowledge that de novo review is required." *Grinder,* 73 F.3d at 795. This court is both aware of the need for and has indeed conducted a *de novo* review of the complete record presented to the magistrate judge on the defendants' motion for summary judgment in response to the plaintiffs' objections to the magistrate judge's report and recommendation. *Cf. Shelton,* 87 F.3d at 996 (the presumption of proper review was upheld where the district court set out the correct legal standard and noted that the entire record must be reviewed).

Here, the plaintiffs' objections to the magistrate judge's report and recommendation are as follows:

1. That the Magistrate Judge errored [sic] in his finding that conditions which have the design to deprive inmates [of] sleep do not, in this case, arise to an Eighth Amendment violation.

2. That the Magistrate Judge errored [sic] in his finding that the extent to which plaintiff was denied sleep in this case denied Plaintiff of a minimal measure of life's necessity.

3. That the Magistrate Judge errored [sic] in his finding that a fact question was not generated in this case that Plaintiff's sleep deprivation, under the circumstances present in the lock-up unit, denied Plaintiff of a basic human need.

Plaintiffs' Objection To Report And Recommendation. This statement of the plaintiffs' objections is little more than a conclusory recitation that the magistrate judge arrived at the wrong result, without any attempt to point out the specific errors in his proposed findings and recommendations, let alone where the record evidence gives rise to a genuine issue of material fact on each issue. *Cf. Hudson,* 46 F.3d at 786 (noting that other circuit courts of appeals have recognized an exception to the requirement of *de novo* review where the objecting party made only "general and conclusory" objections). However, " '[t]he Eighth Circuit has ... repeatedly emphasized the necessity of de novo

**2.** The district court's findings of fact, made after its *de novo* review of the magistrate judge's findings, however, are reviewed "under the clearly

erroneous standard." *Choate v. Lockhart,* 7 F.3d 1370, 1373 n. 1 (8th Cir.1993).

review, and thus retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate.'" *Hudson*, 46 F.3d at 786 (quoting *Belk*, 15 F.3d at 815). Therefore, whatever the shortcomings of plaintiffs' counsel's statement of the plaintiffs' objections, the court will conduct a *de novo* review of the magistrate judge's conclusions in light of those objections.

Various courts have considered claims that continuous illumination of cells constituted a violation of prisoners' Eighth Amendment rights, with mixed results. The reason for such mixed results on "constant illumination" claims, this court concludes, is that such cases are fact-driven. For example, in the two decisions upon which the magistrate judge relied in this case, the district courts concluded that the discomfort of constant illumination was not sufficiently severe to constitute a constitutional deprivation. *See Bauer v. Sielaff*, 372 F.Supp. 1104 (E.D.Pa. 1974); *Williams v. Ward*, 567 F.Supp. 10 (E.D.N.Y.1982).

By contrast, in *Zatko v. Rowland*, 835 F.Supp. 1174 (N.D.Cal.1993), the court found that constant illumination of a jail cell with bright light, which deprived the inmate of normal sleep, "would violate his basic right to shelter." *Zatko*, 835 F.Supp. at 1181. However, the "constant illumination" claim in question there was nonetheless dismissed on facts showing that no deprivation of normal sleep actually occurred: The "plaintiff admitted during deposition that correctional officers 'try to accommodate the inmates [and do not] unnecessarily use the light to keep [him] awake.'" *Id.*

Other courts have found that constant lighting served a legitimate penological purpose in the circumstances of the case. Two decisions of the Eighth Circuit Court of Appeals belong to this group of cases. A dec-

ade ago, the Eighth Circuit Court of Appeals upheld a district court's conclusion that "the continuous lighting in [a] holding cell was not unreasonable given the need for jail security and the need to monitor [a pre-trial detainee]." *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir.1987). More recently, the Eighth Circuit Court of Appeals considered a claim of another pre-trail detainee that he was "forced to sleep on a mat on the floor under bright lights, which were on twenty-four hours a day." *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650 (8th Cir.1996). The court concluded that "the totality of the circumstances—which include the relative[ly] short duration of the confinement, the necessity to keep the detainee under observation for both his medical condition as well as general safety concerns, and the amount of time that he spent out of the cell-supports the assertion of legitimate governmental interest ... and therefore, does not constitute a violation of [the detainee's] due process rights." *Id.* (internal citation omitted). The court's conclusion was also colored by the failure of the plaintiff to demonstrate any objective harm, because "[d]espite his complaint of the constant light, he was observed sleeping ninety-three hours of the fourteen days spent in the vestibule." *Id.* Similarly, in *Fillmore v. Ordonez*, 829 F.Supp. 1544 (D.Kan.1993), *aff'd*, 17 F.3d 1436 (10th Cir. 1994) (table decision), although an inmate asserted that constant lights in his cell created adverse sleeping conditions amounting to "torture," the district court had "no difficulty holding as a matter of law that the electronic surveillance system, with its around-the-clock beeping and soft lighting, was reasonably related to the maintenance of internal security of the Osage County jail, and as such did not amount to punishment prohibited by the Due Process Clause." *Fillmore*, 829 F.Supp. at 1568.[3]

---

**3.** Some unpublished decisions also reject "constant illumination" claims on various grounds. *See Rossell v. McFadden*, 19 F.3d 1441, 1994 WL 88615 (9th Cir.1994) (table opinion) (the court upheld dismissal as frivolous an inmate's Eighth Amendment claim that he was subjected to cruel and unusual punishment when he was placed in a cellblock with continuous lighting from 4:30 a.m. to 10:00 p.m., and he was unable to control the light switch or cover the light in his cell,

because "[t]here is no suggestion that [the inmate] has suffered a significant medical condition as a result of the lighting in his cell"); *Clark v. Stotts*, 1996 WL 583454 (D.Kan.1996) (relying on *Fillmore*, 829 F.Supp. at 1544, the court granted the defendants' motion for summary judgment, concluding that an inmate who complained of constant low lighting in his cell had offered no more than a generalized complaint never presented to prison officials, and that "the

"Constant illumination" claims have also met with occasional success, or at least have survived summary judgment. For example, in *Keenan v. Hall,* 83 F.3d 1083 (9th Cir. 1996), the Ninth Circuit Court of Appeals overruled the district court's grant of summary judgment on such a claim as follows:

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." *Hoptowit v. Spellman,* 753 F.2d [779,] 783 [(9th Cir.1985)]. Moreover, "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional." *LeMaire v. Maass,* 745 F.Supp. 623, 636 (D.Or.1990), *vacated on other grounds,* 12 F.3d 1444, 1458–59 (9th Cir. 1993).

Keenan alleged that large florescent [sic] lights directly in front of and behind his cell shone into his cell 24 hours a day, so that his cell was "constantly illuminated, and [Keenan] had no way of telling night or day," and that this condition caused him "grave sleeping problems" and other mental and psychological problems. Amended Complaint of May 17, 1993, at 9–10; Motion to Submit Additional Authorities of Feb. 24, 1994, ex. 1 at 2. While the defendants produced contrary evidence, *see* Affidavit of Theodore S. Long of Nov. 3, 1993, at 8 (claiming an inmate would not be affected by the lights if he slept with his head towards the back of his cell), Keenan produced sufficient evidence to make his lighting claim a disputed issue of material fact not subject to summary judgment. *Keenan,* 83 F.3d at 1090–91. The decision upon which the Ninth Circuit Court of Appeals relied, *LeMaire v. Maass,* 745 F.Supp. 623 (D.Or.1990), *vacated on other grounds,* 12 F.3d 1444 (9th Cir.1993), also deserves

further scrutiny. In *LeMaire,* the court's discussion of twenty-four hour lighting was as follows:

It is undisputed that the lights in the quiet cells remain on continuously. Plaintiff and other inmates testified that the continuous illumination disturbs their sleep and causes other psychological effects. Plaintiff's expert psychiatrist, Dr. Rundle, testified that continuous, long-term confinement in quiet cells itself can cause psychotic symptoms and aggravate preexisting mental disorders. He testified that in addition to this harmful effect, lighting the quiet cells 24 hours a day makes sleep difficult and exacerbates the harm. I accept the testimony of plaintiff and Dr. Rundle.

Defendant justified the constant illumination in the quiet cells as a security measure, so [prison] staff could see into the cells. *In the abstract, this is a legitimate penological justification. However, there is no evidence that [prison] staff needs to see into the quiet cells for 24 hours per day, or that they are even near the quiet cells for 24 hours per day. Defendant offered no reason why the cells could not have switches outside so guards can see into them when they must.*

There is no legitimate penological justification for requiring plaintiff to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional.

*LeMaire,* 745 F.Supp. at 636. This portion of the district court's ruling was vacated, not because it was incorrect, but because "the state ... agrees to modify its use of lighting in the cells." *LeMaire v. Maass,* 12 F.3d 1444, 1459 (9th Cir.1993). "Taking the state at its word," the court of appeals dissolved the district court's injunction as to the man-

use of low light in cell areas lies within the broad discretion of corrections authorities"); *Spivey v. Doria,* 1994 WL 97756 (N.D.Ill.1994) (a pre-trial detainee failed to state a conditions of confinement claim where he "alleged only that the lights and noise interfere[d] with his sleep not that he [wa]s unable to sleep or that the sleep deprivation ha[d] caused him any harm," and thus did not state a claim rising to the level of a constitutional violation); *Pawelski v. Cooke,* 1991 WL

403181 (W.D.Wis.1991) (twenty-four hour illumination of a cell with a 40 watt light bulb for security purposes amounted to "no more than an inconvenience to the segregation inmates," and therefore the complaining inmate's motion for summary judgment was denied and the defendants' motion for summary judgment was granted on the plaintiff's Eighth Amendment claim), *aff'd,* 972 F.2d 352 (7th Cir.1992) (table opinion).

agement of the quiet cells. *Id.* These decisions caution that even the question of whether constant lighting serves a legitimate penological purpose depends upon the circumstances of the case. Where no such legitimate penological purpose is present, there is at a minimum an inference that imposition of the adverse condition is with deliberate indifference to its effects upon the inmate.[4]

Because the magistrate judge was considering a motion for summary judgment, not reporting a recommended disposition after a trial on the merits, the question was not whether the plaintiffs succeeded in "demonstrating" objective harm or subjective deliberate indifference to that harm—the basis on which the magistrate judge reached his conclusions—but *whether the plaintiffs generated genuine issues of material fact on these issues.* See Fed. R. Civ. P. 56(c). As the Eighth Circuit Court of Appeals explained in another Eighth Amendment case, when the district court makes a *de novo* review of a magistrate judge's report recommending that the defendants' motion for summary judgment be granted, "the district court should consider whether the circumstantial evidence in th[e] case establishes a genuine issue of material fact regarding the defendants' deliberate indifference precluding summary judgment." *Grinder,* 73 F.3d at 795–96. The same considerations presumably also apply to the district court's review of a report and recommendation on the objective element of an Eighth Amendment claim. Furthermore, "[a]s the party opposing summary judgment, [the prisoner] must be given the benefit of all favorable factual inferences and summary judgment cannot be granted where he presents a triable issue." *Id.* at 796.

Contrary to the magistrate judge's conclusion, this court finds from the summary judgment record that the plaintiffs have generated genuine issues of material fact on both prongs of an Eighth Amendment analysis. On the objective prong, the magistrate judge concluded that the prisoners had failed to establish a sufficiently serious deprivation of the minimal civilized measure of life's necessities, because they did not claim that they could not sleep, despite constant lighting, or that there was any serious harm to their health from a lack of sleep. However, the record gives rise to contrary inferences. In an affidavit in support of his resistance to the defendants' summary judgment motion, plaintiff Shepherd asserted that the constant lighting made it "verry [sic] difficult for the plaintiff to sleep at nite [sic]." Elsewhere, Shepherd alleged that the constant lighting kept him up most, if not all, of the night. This evidence is sufficient to generate a genuine issue of material fact on the extent of the plaintiffs' harm from the constant lighting. *Cf. Keenan,* 83 F.3d at 1090–91 (a prisoner generated a genuine issue of material fact as to the severity of a constitutional deprivation caused by constant lighting of his cell where he asserted that the light made it impossible for him to tell if it was night or day and caused him "grave sleeping problems" and other mental and psychological problems, despite contrary evidence from prison officials); *Zatko,* 835 F.Supp. at 1181 (although a "constant illumination" claim was denied on other grounds, the court found that constant illumination of a jail cell with bright light, which deprived the inmate of normal sleep, "would violate his basic right to shelter."). Although at the summary judgment stage of the proceedings, the plaintiffs here presented no expert testimony on the psychological effects of continuous lighting, as did the plaintiffs in *LeMaire,* 745 F.Supp. at 636, the court finds that an inference of psychological harm necessarily arises from the length of time the plaintiffs were subject-

---

4. Some unpublished decisions also uphold the viability of "constant illumination" claims. *See Gilcrist v. Kautzky,* 876 F.2d 896, 1989 WL 61761 (9th Cir.1989) (the court reversed dismissal of a prisoner's claim that he was subjected to twenty-four hour lighting without a legitimate security concern resulting in intentional and unreasonable pain and suffering, because the facts alleged, if true, were sufficient to state an Eighth Amendment claim). *See also Kornijenko v. Wal-lenstein,* 1987 WL 4836 (E.D.Pa.1987) (finding that an inmate's claim that he was prevented from sleeping by a light that remained on in his cell twenty-four hours a day and that the guards banged on his cell door to keep him awake might state a conditions of confinement claim, but dismissing the claim with leave to amend to state a link between the named defendants and the conditions about which the inmate complained).

ed to lighting so far removed from natural conditions.

In this respect, the decision of the Eighth Circuit Court of Appeals in *O'Donnell*, 826 F.2d at 790, and its later decision in *Ferguson*, 88 F.3d at 650, which would otherwise constitute controlling authority, are distinguishable. In each of those cases, the pretrial detainee was subjected to constant illumination for a relatively short period of time. *See Ferguson*, 88 F.3d at 650; *O'Donnell*, 826 F.2d at 790. The record here reflects that plaintiff Shepherd spent 283 nights in disciplinary detention under constant illumination, while plaintiff Lennie spent 550 nights under these conditions. Very different inferences arise concerning the effects of constant illumination when exposure to that condition is long term.

There can be little doubt that subjecting prisoners to continuous *darkness* would at least raise a constitutional question. *See Wycoff v. Brewer*, 572 F.2d 1260, 1263 & n. 5 (8th Cir.1978) (confinement of a prisoner in a cell that was or could be totally darkened, where the prisoner was placed nude, without bedding or covering, "would unquestionably be held unconstitutional"). *Accord LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("We cannot approve of threatening an inmate's sanity and severing his contacts with reality by placing him in a dark cell almost continuously day and night."), *cert. denied*, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973). What is in question here, continuous *lighting*, which is just as foreign a condition as continuous darkness, should at least raise an inference of a constitutional violation. Similarly, the effectiveness of sleep deprivation as a tool of torture has long been recognized. *See Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961) (recognizing deprivation of food and sleep as unconstitutional punishment); *Ashcraft v. Tennessee*, 322 U.S. 143, 151, 64 S.Ct. 921, 925, 88 L.Ed. 1192 (1944) (" 'It has been known since 1500 at least that deprivation of sleep is the most effective torture and certain to produce any confession desired,' " quoting Report of Committee on Lawless Enforcement of Law, Section of Criminal Law and Criminology of the American Bar Associa-

tion, 1 AMÉRICAN JOURNAL OF POLICE SCIENCE 575, 579–80 (1930)). Constant illumination can undoubtedly cause sleep deprivation-indeed, that is the precise reason these plaintiffs assert constant illumination constituted an Eighth Amendment violation—and sleep is certainly an "identifiable human need."

Furthermore, "many courts 'have recognized that a proscription against cruel and unusual punishment can be violated by the cumulative effect of several ... conditions which, considered independently, might or might not approach the requisite severity.' " *United States ex rel. Schuster v. Vincent*, 524 F.2d 153, 160 (2d Cir.1975) (quoting Annot., *Prison Conditions as Amounting to Cruel and Unusual Punishment*, 51 A.L.R.3d 111, 207 (1973), and *Holt v. Sarver*, 309 F.Supp. 362, 373 (E.D.Ar.1970), *aff'd*, 442 F.2d 304 (8th Cir.1971)). Similarly, this court will not discount the inference that, while continuous lighting during one twenty-four hour period might have little adverse effect on a prisoner, the cumulative effect of continuous lighting over an extended period could be so significant as to reach the requisite severity.

On the subjective prong of the plaintiffs' Eighth Amendment claims, the magistrate judge concluded that the plaintiffs had failed to establish that the defendants had consciously disregarded a substantial risk of serious harm to the inmates' health or safety as the result of continuous lighting of their cells. This conclusion appears to stem, in the first instance, from what the magistrate judge perceived to be a lack of evidence of any actual harm to the plaintiffs, and, in the second, from his acceptance that the prison officials had legitimate penological reasons for the constant illumination. Again, there are contrary inferences concerning objective harm to the plaintiffs, as discussed above. There are also contrary inferences on the legitimacy of the penological reasons for the constant illumination. There is a triable issue on whether prison staff needs to see into the disciplinary detention cells for twenty-four hours per day, whether they are even near the disciplinary detention cells for twenty-four hours per day, and whether the cells could not have switches outside so guards can see into them when they must. *Compare*

*LeMaire,* 745 F.Supp. at 636 (finding no evidence of these legitimate penological reasons).

Because the record generates genuine issues of material fact as to the elements of the plaintiffs' Eighth Amendment claims, this court must reject the magistrate judge's contrary conclusions and his recommendation that summary judgment in favor of the defendants be granted. *See* 28 U.S.C. § 636(b)(1) (the district court may accept, reject, or modify the magistrate judge's report and recommendation).

It may well be that the plaintiffs will ultimately fail to prove the elements of their claims or that the defendants are entitled to summary judgment on the ground of qualified immunity, an issue the magistrate judge did not reach. *See Hancock v. Thalacker,* 933 F.Supp. 1449, 1493 (N.D.Iowa 1996) (discussing the standards for qualified immunity at the summary judgment stage of the proceedings); *Bruns v. Halford,* 913 F.Supp. 1295, 1304–06 (N.D.Iowa 1996) (same). Having rejected the magistrate judge's conclusions on the issues he did address, and recognizing that the entire case was referred to the magistrate judge, this court must refer the defendants' motion for summary judgment back to the magistrate judge to consider the qualified immunity issue. Furthermore, because qualified immunity stands as a bar only to compensatory relief, even if the magistrate judge finds, and this court upholds, qualified immunity, the inmates' claim for injunctive relief would still be triable. *See Hancock,* 933 F.Supp. at 1493.

The plaintiffs' objections to the magistrate judge's Report and Recommendation of August 22, 1997, are **sustained**, and the recommendation to grant summary judgment in favor of defendants is **rejected**. This case is referred back to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) for further proceedings in accordance with this ruling.

**IT IS SO ORDERED.**