BERZON, Circuit Judge,
dissenting in part:
I join Part III.B of the majority opinion, as I agree that Defendants Mandeville and Rosario are entitled to qualified immunity on the due process issues. In my view, however, the defendants are not entitled to qualified immunity on Chappell’s Eighth Amendment claim. As I would affirm the district court’s denial of summary judgment on qualified immunity with respect to the Eighth Amendment issue, I respectfully dissent from Part III.A of the majority opinion.
I
Our jurisdiction over this collateral order appeal of the district court’s denial of summary judgment on qualified immunity grounds is limited to questions of law. See Ortiz v. Jordan, — U.S. -, 131 S.Ct. 884, 891, 178 L.Ed.2d 703 (2011); Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); Johnson v. Jones, 515 U.S. 304, 319-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); Alston v. Read, 663 F.3d 1094, 1098 (9th Cir.2011). We do not concern ourselves with whether the “pretrial record sets forth a genuine issue of fact for trial,” but instead examine the “purely legal issue whether the facts alleged ... support a claim of clearly established law.” Alston, 663 F.3d at 1098 (alteration in original) (internal quotation marks omitted).
On this record, there are disputed issues of fact concerning: (a) the impact of the lighting, in combination with other conditions (e.g., lack of a mattress, waist restraints, etc.), on Chappell’s sleep; and (b) the legitimate need for a twenty-four hour bright light in Chappell’s cell (as opposed to a dimmed light) for surveillance, given all the other restrictions on his movement. We resolve all factual disputes and draw all reasonable inferences in favor of Chappell, the non-moving party, and “look at the purely legal question of whether the defendants’] alleged conduct violated [Chappell’s] clearly established constitutional rights.” Cunningham v. City of Wenatchee, 345 F.3d 802, 807-08 (9th Cir. 2003); accord Mattos v. Agarano, 661 F.3d 433, 439-40 (9th Cir.2011), cert. denied, - U.S. -, 132 S.Ct. 2681, 2682, 2684, 183 L.Ed.2d 45, 62 (2012); Jeffers v. Gomez, 267 F.3d 895, 903 (9th Cir.2001).
For purposes of this appeal, the established facts pertaining to Chappell’s Eighth Amendment claim are as follows:
From April 30, 2002, until May 6, 2002, Chappell was confined to a surveillance cell containing only a bedframe without a mattress. After being stripped and subjected to a “body cavity search,” Chappell was dressed in two pairs of underwear and two jumpsuits, one of each worn facing forward and the other worn backwards. The clothing was taped closed at the thighs, ankles, upper arms, and waist. He was then placed in waist chain restraints and ankle shackles, and was chained to the bedframe. Chappell’s handcuffs were attached to the waist chain, forcing him to keep his hands at his sides at all times, even while eating. The lights in the cell were “very bright” and were kept on constantly throughout his nearly seven-day confinement on contraband watch.
While Chappell did not expressly allege that the conditions of contraband watch *1070 caused him “grave sleeping problems,” as did the prisoner in Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir.1996), the statements in Chappell’s amended complaint permit an inference that his sleep was disturbed. Specifically, he describes how he had to “attempt” to sleep on a bare metal cot with bodily restraints, under constant “very bright light,” alleging that the conditions “did in fact torture [him] mentally” and that he was “deteriorating mentally.”
II
Whether constant illumination violates the Eighth Amendment in a particular case is a fact-specific inquiry. But contrary to the majority’s suggestion, Maj. Op. at 1057-58, officials do not enjoy qualified immunity simply because the precise facts at issue in their particular case have not been addressed previously. Officials can “still be on notice that their conduct violates established law even in novel factual circumstances.” Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). If new facts alone triggered qualified immunity, then officials would rarely if ever be held accountable in cases involving “fact-driven” claims, such as the Eighth Amendment claim at issue here. Cf. Mattos, 661 F.3d at 442 (applying the “clearly established” rule to a fact-specific Fourth Amendment case). We therefore must begin with what was the clearly established Eighth Amendment law regarding prison conditions at the time of Chappell’s contraband watch, and then proceed to determine whether a reasonable prison official could have considered the conditions of Chappell’s contraband watch constitutional in light of those precedents.
In April-May 2002, it was clearly established that it is unconstitutional to cause a prisoner harm by subjecting him to constant lighting. Keenan pronounced in 1996 that “[tjhere is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination.” 83 F.3d at 1090 (alteration in original) (emphasis added). Thus, contrary to the majority’s representation, Keenan did not simply hold that the prison officials in that particular case lacked a legitimate penological justification for imposing constant illumination, see Maj. Op. at 1057-58 & n. 3; it held that if constant illumination causes a prisoner physical or psychological harm, then no penological purpose can justify it; “[the] practice is unconstitutional.” Keenan, 83 F.3d at 1090.
Moreover, it was clearly established law that conditions having the mutually reinforcing effect of depriving a prisoner of a single basic need, such as sleep, may violate the Eighth Amendment. See Wilson v. Seiter, 501 U.S. 294, 304-05, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); see also Keenan, 83 F.3d at 1090 (“Adequate lighting is one of the fundamental attributes of adequate shelter required by the Eighth Amendment.”) (internal quotation marks omitted); Harper v. Showers, 174 F.3d 716, 720 (5th Cir.1999) (“[S]leep undoubtedly counts as one of life’s basic needs.”); Shepherd v. Ault, 982 F.Supp. 643, 648 (N.D.Iowa 1997) (“Constant illumination can undoubtedly cause sleep deprivation ... and sleep is certainly an ‘identifiable human need.’ ”).
The cases the majority cites in support of its qualified immunity analysis are not to the contrary. See Maj. Op. at 1058-59. Instead, those cases held only that constant illumination from dim lights or lights distanced from a prisoner’s cell (such as hallway lights) did not amount to cruel and unusual punishment, see Fillmore v. Ordonez, 829 F.Supp. 1544, 1552, 1568 (D.Kan. 1993) (“low-intensity,” “soft” lighting); Williams v. Ward, 567 F.Supp. 10, 13 (E.D.N.Y.1982) (light in hallway); Cassidy v. Superintendent, 392 F.Supp. 330, 334 (W.D.Va.1975) (“[T]he light is not so bright *1071 as to interfere with the inmates’ rest.”), and that “discomfort of lights at night [does] not constitute a constitutional deprivation” when the prisoner was provided with bedding, not subject to any other bodily restraints in his cell, and not denied sleep, Bauer v. Sielaff, 372 F.Supp. 1104, 1110 (E.D.Pa.1974). Those cases are inapposite here, where the light was “very bright” and inside Chappell’s cell, and where the fair inference from the facts on summary judgment, viewed most favorably to the plaintiff, is that the lighting, in combination with the other conditions on contraband watch, interfered with Chappell’s sleep.
Similarly, the majority’s reliance on Zatko v. Rowland, 835 F.Supp. 1174 (N.D.Cal. 1993), is misplaced. See Maj. Op. at 1058-59, 1059. While the court’s observation in Zatko that constant illumination of a jail cell with bright light, depriving the inmate of normal sleep, “would violate his basic right to shelter,” is relevant, id. at 1181, its ultimate ruling on Zatko’s Eighth Amendment claim has little bearing on the law applicable here. Zatko admitted that the officers “tr[ied] to accommodate the inmates [and did not] unnecessarily use the light to keep [him] awake.” Id. In contrast, Chappell never conceded that the bright light (in combination with other conditions) was not intended to interfere with his sleep, or that the defendants did not exhibit deliberate indifference to its impact on his sleep.
Moreover, that some courts — unlike ours- — -have recognized that there can be a legitimate penological justification for constant lighting does not mean that any asserted penological purpose will justify such illumination. The Eighth Circuit cases cited by the majority, Ferguson v. Cape Girardeau County, 88 F.3d 647 (8th Cir.1996) and O’Donnell v. Thomas, 826 F.2d 788 (8th Cir.1987), see Maj. Op. at 1059, held that there was a legitimate governmental interest in constant illumination of pretrial inmates’ cells in view of the particular circumstances of those eases — circumstances distinct enough from those at issue here that a reasonable officer would not have thought that either Ferguson or O’Donnell condones the actions taken here.
In Ferguson, the prisoner’s medical condition and safety concerns, in combination with the amount of time he spent outside of the cell, justified constant illumination to enable continuous surveillance of the prisoner while he was in his cell. See Ferguson, 88 F.3d at 650. Moreover, Ferguson was observed sleeping “ninety-three hours of the fourteen days spent in the vestibule [cell].” Id. Here, the totality of the circumstances, including the conditions restricting Chappell’s movement and foreclosing his ability to conceal anything while on contraband watch, detract from, rather than enhance, the need for the constant, twenty-four-hour bright light: Chappell was not allowed out of the cell; had no mattress, water, or toilet; was dressed in highly restrictive clothing; and was placed in waist restraints and shackles.
Nor would O’Donnell lead a reasonable officer to believe that the conditions of Chappell’s confinement on contraband watch were constitutional. The constant illumination of O’Donnell’s cell was held “not unreasonable” in view of the inmate’s previous suicide attempt, escape concerns, and fear that he would be a danger to himself or others. O’Donnell, 826 F.2d at 790. Comparable concerns were not present in Chappell’s case. Moreover, there was no indication that, in addition to the lighting, O’Donnell was simultaneously subject to physical restraints in his holding cell, like those imposed on Chappell, decreasing the need for illumination as a safety precaution.
*1072 A reasonable officer would have known that, in combination, the twenty-four-hour bright light, the absence of a mattress, and the extensive bodily restraints risked depriving Chappell of sleep, in violation of the Eighth Amendment. The district court correctly denied summary judgment on this claim on qualified immunity grounds, affording Chappell an opportunity to prove that Mandeville and Rosario demonstrated deliberate indifference to the risk of physical or psychological harm created by the conditions of confinement on contraband watch. For these reasons, I respectfully dissent from Part III.A of the majority opinion.